Robert E. GREENE, Acting Regional Director of the First Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 275, INTERNATIONAL UNION OF ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA, AFL–CIO, Respondents.

Civ. A. No. 61–931.

United States District Court
D. Massachusetts.

Jan. 5, 1962.

George Norman, Laurence A. Miller, Washington, D. C., for petitioner.

Robert Weihrauch, Boston, Mass., for respondents.

CAFFREY, District Judge.

This cause came on to be heard upon the verified petition of Robert E. Greene, Acting Regional Director of the First Region of the National Labor Relations Board (herein called the Board) for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (herein called the Act), 29 U.S.C.A. § 160(*l*), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held beginning on December 26, 1961. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issue, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following findings of fact:

1. Petitioner is Acting Regional Director of the First Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about October 18, 1961, Remington Rand Univac Division, Sperry Rand Corporation (herein called Remington) pursuant to provisions of the Act, filed a charge with the Board, alleging, *inter alia*, that Local 275, International Union of Electrical, Radio & Machine Workers of America, AFL–CIO, a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (ii), subparagraph (B), of the Act, 29 U.S.C. A. § 158(b) (4) (ii) (B).

3. The aforesaid charge was referred to petitioner as Acting Regional Director of the First Region of the Board.

4. I find that petitioner has reasonable cause to believe that:

(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal offices at Boston, Massachusetts, and at all times material herein respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) Remington is engaged at Boston, Massachusetts, and other places, in the business of manufacturing, selling, leasing, maintaining and servicing tabulating machines and computer systems. In the operation of its business, Remington annually receives goods and materials from outside the Commonwealth of Massachusetts valued at in excess of $50,000.

(d) Remington's customers, hereinafter referred to, annually receive from or ship to points outside the Commonwealth of Massachusetts goods, articles, or materials valued at in excess of $50,000, or are engaged in industries affecting commerce.

(e) Since on or about September 20, 1961, the respondent has been engaged in a nationwide strike against Remington and has, since that date, picketed Remington's sales and service offices, including the Boston office.

(f) At no time material herein has respondent had any labor dispute with any of Remington's customers.

(g) On or about November 8, 1961 and again on or about November 20, 1961, respondent picketed Craftsman Life Insurance Company at 851 Boylston St., Boston, when employees of Remington Rand Univac Division, Sperry Rand Corporation (herein called Remington) were not on the premises. The pickets carried signs stating, in part, "Mr. Wetzler and Craftsman Insurance Company Unfair to Organized Labor."

(h) On or about November 15, 1961, respondent picketed Boston Five Cent Savings Bank, 30 School Street, Boston, when employees of Remington were not on the premises. The pickets carried signs stating "The Boston Five is unfair to Organized Labor by using strike breakers in the building."

(i) On or about November 10, 1961, respondent picketed Old Mr. Boston at 1010 Massachusetts Avenue, Boston, Massachusetts, when employees of Remington were not on the premises. The pickets carried signs stating, in part, "Old Mr. Boston—Is customer against organized labor—Why do they allow strikebreakers in this building?" Respondent, while picketing Old Mr. Boston, passed out leaflets referring to its strike against and dispute with Remington.

(j) On or about November 16, 1961, respondent picketed Paine Furniture Company at 81 Arlington Street, Boston, Massachusetts, when employees of Remington were not on the premises. The pickets carried signs stating "Paine Furniture Company is unfair to organized labor. They are employing strike-breakers—Local 275 IUE."

(k) On or about November 16, 1961, respondent picketed Sunshine Biscuit Company, at 141 Needham Street, Newton Highlands, Massachusetts, when employees of Remington were not on the premises. The pickets carried signs reading "Sunshine Biscuit is against Organized Labor. Why do they allow strike-breakers in this building—Local 275 IUE." Respondent during said picketing of Sunshine Biscuit Company passed out leaflets referring to its strike against and dispute with Remington.

(l) On or about November 17, 1961, respondent picketed East Boston Savings Bank, 10 Meridian Street, Boston, Massachusetts, when equipment service employees of Remington were not on the premises. There was a Remington salesman present during the picketing whose duties did not include the service and repair functions performed by members of Local 275. The pickets carried signs reading "Is East Boston Savings Bank

Against Organized Labor—Why do they allow strikebreakers in this building—Union No. 275."

(m) On or about November 15, 1961, respondent picketed Marrud, Inc., at 189 Dean Street, Norwood, Massachusetts, when service employees of Remington were not on the premises. There was a Remington salesman present during the picketing whose duties did not include the service and repair functions performed by members of Local 275. The pickets carried signs that read, in part, "Is Marrud against organized labor. Why do they allow strike-breakers in this building."

(n) On or about September 25, 1961, on or about November 27, 1961, and on other occasions respondent picketed United Shoe Machinery Corporation at 140 Federal Street, Boston, Massachusetts, when service employees of Remington were not on the premises. The pickets carried signs stating, in part, "Remington Rand Univac employees on strike" and at other times stating, in part, "United Shoe unfair to organized labor."

(o) On or about November 9, 1961, respondent picketed Milton Savings Bank, 40 Adams Street, Milton, Massachusetts, when employees of Remington were not on the premises. The pickets carried signs stating "Remington Rand on Strike—Why do they allow strikebreakers in this building? Equipment in this building is being serviced by scabs."

(p) On or about December 20, 1961, various customers of Remington received a letter purporting to come from one J. Gullota, business representative for Local 275, and several other IUE Locals, which letter advised its recipients that "Unless you cease doing business immediately with Remington Rand we will handbill your place of business, your retail outlets if any, or any location where your company conducts business. We regret having to do this but Remington Rand leaves us no choice." Among the recipients of this letter (Petitioner's Exhibit No. 2) were the Boston Five Cent Savings Bank, Paine Furniture Company, Craftsman Life Insurance Company, Milton Savings Bank, East Boston Savings Bank, United Shoe Machinery Corp., and Marrud, Inc. The evidence adduced at the hearing before me did not, in fact, establish that Gullota was the author of this letter. The fact that the above-named Remington customers, all of whom were picketed by respondent, were recipients of a letter of this type is a most singular coincidence if, in fact, the letter did not emanate from Gullota. Still more incredible is the fact that Edward Sullivan, President of Local 275, testified before the noon recess to various matters relevant to this case, and stated that he did not know whether or not Gullota was the author of this letter. After the noon recess, when recalled, Mr. Sullivan testified that during the lunch time recess he called Gullota's New York office, that he was told that Gullota was not there, that he talked to a person who could be characterized as Gullota's superior, and that he made no inquiry whatsoever as to whether Gullota had issued the letter. On the basis of the foregoing, the Board, were it to call Gullota at the hearing before it, might well find that Gullota, in fact, was the author of this letter. I am satisfied that petitioner has sustained his burden of proof by reason of the activities described in findings of fact 4(g) through 4(o) hereof, without reference to the question of the authorship and issuance of this letter.

(q) Respondent's acts and conduct set forth in findings of fact 4(g) through 4(o) above were in furtherance of the aforesaid dispute, set forth in findings of fact 4(e) above.

(r) By the acts and conduct set forth in findings of fact 4(g) through 4(o) above, respondent has threatened, coerced, and restrained said customers and other persons engaged in commerce or in industries affecting commerce.

(s) An object of the acts and conduct of respondent, set forth in findings of fact 4(g) through 4(r) above, was and is to force or require said customers and other persons to cease using, selling, handling, transporting, or otherwise deal-

ing in the products of and to cease doing business with Remington.

(t) The acts and conduct of respondent set forth in findings of fact 4(g) through 4(s) above, occurring in connection with the operations of Craftsman Life Insurance Company, Boston Five Cent Savings Bank, Old Mr. Boston, Paine Furniture Company, Sunshine Biscuit Company, East Boston Savings Bank, Marrud, Inc., Milton Savings Bank, United Shoe Machinery Corporation and Remington have a close, intimate, and substantial relation to trade, traffic, and commerce among the several states and tend to lead to, and do lead to, labor disputes burdening and obstructing commerce and the free flow of commerce.

5. It may fairly be anticipated that, unless enjoined, respondent will continue and repeat the acts and conduct set forth in findings of fact 4(g) through 4(s) above, or similar or like acts and conduct.

## Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(*l*) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8(b), and 10(*l*) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(*l*).

(b) Remington is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) Craftsman Life Insurance Company, Boston Five Cent Savings Bank, Old Mr. Boston, Paine Furniture Company, Sunshine Biscuit Company, East Boston Savings Bank, Marrud, Inc., Milton Savings Bank, and United Shoe Machinery Corporation are engaged in commerce or in an industry affecting commerce.

(d) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (4) (ii), subparagraph (B) of the Act, affecting commerce within the

meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just, and proper that, pending final disposition of the matters herein involved pending before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation or repetition, of the acts and conduct set forth in Findings of Fact 4(g) through 4(s) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.